Ingalls, J.
I am convinced that the court, upon the application of a stockholder, possesses the power to open or vacate a judgment which dissolves a corporation, although such stockholder was not a party to the action instituted by the attorney-general for that purpose, when it shall be shown to the court that there is reasonable ground for the belief that fraud or collusion has been practiced in obtaining such judgment, whereby the rights of such stockholder will be impaired or destroyed. The court is vested with the control of its process, records and proceedings, so far as to prevent their being improperly employed, through fraud or collusion, to injure the citizen or to deprive him of his just rights (People v. Mayor, &c. of N. Y., 19 How. Pr. 289; Chappel v. Chappel, 12 N. Y. 215; Martin v. Martin, 3 Barn. & Ald. 934; People v. Ulster Common Pleas, 18 Wend. 628; Cleveland v. Porter, 10 Abb. Pr. 407; State of Michigan v. Phœnix Bank, 33 N. Y. 9. 27; Bridenbecker v. Mason, 16 How. *360 Pr. 203; Stilwell v. Carpenter, 2 Abb. N. C. 238; Young v. Drake, 8 Hun, 61; Denton v. Denton, 41 How. Pr. 221; Lowber v. Mayor, &c. of N. Y., 5 Abb. Pr. 484; S. C., 26 Barb. 263). The cases above cited show under what a variety of circumstances the courts have exercised their authority in vacating judgments and other proceedings, to prevent their being used, through fraud or collusion, to produce wrong and injustice.
Without stopping here to discuss particularly all the facts and circumstances disclosed by the papers, I will state that, from a careful examination thereof, I have become satisfied that in the proceedings which resulted in the dissolution of the corporation, considered in connection with the subsequent manipulation of the property and effects thereof, sufficient appears, not only to excite suspicion in regard to the honesty of the transaction, but to induce the belief that it is :so far tainted by fraud and collusion as to require that the judgment and proceedings should be so far opened as to allow the stockholders who make this application to interpose an answer and to defend the action. It is shown that such stockholders were the owners of a majority of the stock of the corporation, at the time it was dissolved, and that although a portion of them transacted business in the city of New York, where the office of the corporation was located, no notice was given to them of the proceeding to dissolve the corporation, nor did they receive any information thereof until subsequent to the entry of the judgment. It appears that the proceedings advanced as rapidly as the forms of the law would permit, from their commencement to the conclusion thereof. The complaint was verified September 14, 1881, and served with the summons, September 21, 1881, upon Charles H. Green, who was the president of the company, and who resided in the city of New York. Mr. Green interposed a demurrer to the complaint, which was over *361 ruled as frivolous, and judgment ordered in favor of the plaintiffs on October 15, 1881, which was entered accordingly, without allowing leave to withdraw the demurrer, and to answer. The affidavit of Mr. Green is furnished, wherein he has undertaken to explain the circumstances of a suspicious nature which surround the transaction; and it is possible that, upon a trial, they may receive such further explanation as may have the effect to remove every appearance of fraud or collusion. Such a result would compensate for all the expense and delay of ■ the trial. The capital and wealth of the country is so largely invested in the stock of corporations that all proper and reasonable protection should be extended to such interests, with a view to guard the same against the consequences of fraud and imposition.
The attorney-general was represented upon the argument of this motion, and made no active resistance to the granting of the relief asked, but submitted the matter, on behalf of the people of the State, to the direction of the court. An order must be entered opening the judgment, so far as to allow the stockholders who make this application, td become parties to the action, and to interpose an answer, and to defend the same. The judgment, and all proceedings which have been taken thereunder, to remain as security or otherwise, except as above directed. But all further proceedings under such judgment by the receiver must be stayed until such trial shall be had, or until the farther order of the court.
Note on the Power op the Court over its Process.
The power of the court, to allow stockholders to intervene and defend an action in which their corporation is a party, has been the subject of controversy in several cases.
In Putnam v. Sweet, 1 Chandl. (Wisc.) 286, the fact that the usurpation of corporate office was effected by abuse of the process of *362 the court, was held a sufficient ground for allowing an action by a stockholder in behalf of himself and all others, to be maintained, although the State be not joined as party.
In Snawhan v. Zinn (Ky., March, 1881, 3 Ky. L. Rep. 13), the action was brought- by a stockholder instead of by the officers, to open a compromise which the directors had made of a previous action brought by them in the corporate name; and the stockholders asked leave to prosecute that action notwithstanding the compromise. The court dismissed the new action on the objections that the corporation had not been made a party, and that it was not alleged that its officers had refused to sue. The right of the stockholders to intervene for such relief seemed to be admitted, provided the stockholder applying comply with the rules established as to previous request to the directors, &c.
Iu a recent case in Georgia, an application by the stockholders to defend an action brought against their corporation, was refused on the ground that their remedy was not to attempt to take its place in defense, but to bring a new action of their own. The point does not seem to have been much considered, and the decision does not question the right of the stockholders, but only the mode in which it is to be worked out, and though it may have been very proper under the Georgia procedure, it cannot be regarded as impugning the soundness of the decision in our text. The circumstances were as follows : Certain stockholders of a corporation petitioned the court for leave to file certain pleas to au action commenced against their corporation, showing that the suit was entirely undefended, that judgment would be obtained therein at the present term unless pleas were filed, that the same person was president of both plaintiff and defendant in said suit, that plaintiff’s attorney was one of defendant’s directors, that defendant as a corporation would make no defense, that large interests would be sacrificed unless they were allowed to defend the refusal of the directors to defend, the damage which would ensue to the petitioners, &c. Held, that the petition should be denied; that the stockholders could not plead or defend for the corporation; that it made no difference that the action was groundless and collusive, and that, from motives of fraud or favor on the part of the officers, the corporation failed or refused to defend. “The stockholders could protect all their lights by instituting a proper action of their own.” Blackman v. Central R. R., &c. Co., 58 Ga. 189.
In a better considered case (Bronson v. La Crosse & M. R. R. Co., 2 Wall. 283), which was a bill in chancery in the circuit for the District of Wisconsin, two stockholders, though not made defendants by the bill, were permitted by leave of the court to appear and put in *363 answers in the name of their company. The supreme court of the United States held that, under these circumstances, the corporation could not be deemed the party represented by the answer, and the stockholders’ answers should have been their own answers as stockholders; but they might, under the circumstances of the case, for the purposes of the appeal, be considered as the stockholders’ answers. On this point the court, in an opinion by Mr. Justice Nelson, say: “It is insisted, however, that the directors of this company refused to appear and defend the bill filed against them, for the fraudulent purpose of sacrificing the interests of the stockholders; and, hence, the necessity as well as the propriety and justice, of permitting the defense by a stockholder in their name.”
“Undoubtedly, in the case supposed, it would be a reproach to law, and especially in a court of equity, if the stockholders were remediless. But in such a case,- the court in its discretion will permit a stockholder to become a party defendant, for the purpose of protecting his own interests against unfounded or illegal claims against the company; and he will also be permitted to appear on behalf of other stockholders who may desire to join him in the defense. But this defense is independent of the company and of its directors, and the stockholder becomes a real and substantial party to the extent of his own interests and of those who may join him, and against whom any proceeding, order, or decree of the court in the cause is binding, and may be enforced. It is true the remedy is an extreme one, and should be admitted by the court' with hesitation and caution; but it grows out of the necessity of the case and for the sake of justice, and may be the only remedy to prevent a flagrant wrong. A complainant, if he chooses, may compel a corporation to appear and answer by a writ of distringas; or he may join with the corporation, a director, or officer, if he desires a discovery under oath. But we are not aware of any other except a complainant, who can compel an appearance or answer. ”
“Now, although the appearance and answers of the stockholders (Rockwell and Fleming) were irregularly allowed by the court, as each was permitted to appear and answer in the name of the company, yet, as the defense set up is doubtless the same as that which they would have relied on if they had been admitted simply as stockholders, we are inclined to regard the answers the same as if put in by them in that character, in the further views we shall take of the case.” See also Mussina v. Goldthwaite, 34 Tex. 125; Roller v. Snodgrass, 15 Kans. 583; Forbes v. Memphis, &c. R. R. Co., 2 Woods, 323.
Other illustrations of the power of the court over its own process are found in the following cases:
*364 The court has power to grant a perpetual stay of proceedings, to prevent fraud or great injustice, and will do so where the facts appear clearly to the court, otherwise it will stay proceedings for a definite period to enable the parties to apply to a court of chancery. Lansing v. Orcott, 16 Johns. 4; Smith v. Page, 15 Id. 395; Bank of Auburn v. Throop, 18 Id. 505.
Edmonds, .L, in Morgan v. Avery, 7 Barb. 656, 659, says: “So far as the attachment is concerned, it is process, and over its process the court has necessarily a control, lest it be abused or perverted to purposes of oppression. That control is exercised, according to the course and practice of the court, by special motion. It required no provision of the Code to confer this power and mode of redress. They are inherent in the court, and unless taken away by statute, must of necessity be resorted to and rendered available.”
The English rule is that the court of chancery has not only full power to stay all proceedings in a suit till the plaintiff has made a discovery which it has called upon him to make, but, if not satisfied that its order has been properly obeyed, may dismiss the suit itself; and, where money has been paid into court, may direct the payment of that money out of court to the party entitled to it. Republic of Liberia v. Roye, L. R. 1 App. Cas. 139; S. C., 15 Moak's Eng. 44.